UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HYLAND STEVEN STERLING #603436,

    Plaintiff,                                           Hon. Jane M. Beckering

v.                                                               Case No. 1:22-cv-1057

JOSEPH VANBUSKIRK, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before me on Defendants' Motion for Summary Judgment on the Basis of Exhaustion. (ECF No. 19.) Plaintiff filed a response (ECF No. 23), but Defendants did not reply. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **denied.**

**I.   Background**

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility, filed a complaint pursuant to 42 U.S.C. § 1983 on November 14, 2022, against Defendants Unknown VanBuskirk (now identified as Joseph VanBuskirk), Unknown Parker (now identified as Jay Parker), and Unknown Sperling, P.A., based on an incident that occurred while he was incarcerated at the Carson City Correctional Facility (DRF) on October 19, 2020. Following initial review of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A and 42 U.S.C. § 1997e(c), Plaintiff's remaining claims are his First Amendment retaliation and his Eighth Amendment excessive force claims against Defendants VanBuskirk and Parker. (ECF Nos. 6 and 7.)

The Court previously summarized Plaintiff's relevant allegations as follows:

1

> Plaintiff alleges that on October 19, 2020, he became lightheaded and dizzy and collapsed naked in the prison shower. At this time, Plaintiff had been taking the prescription medication Levothyroxine for at least three years. Plaintiff states that in 2019, Defendant Sperling had increased the dosage to 0.2 mg per dose.
>
> After Plaintiff collapsed, Defendants Vanbuskirk and Parker were notified and came to the shower where they told Plaintiff that if he did not "get [his] naked ass up off the floor and get some clothes on," they would drag him naked across the base and "let the lady downstairs see [his] ass and little dick." (ECF No. 1, PageID.3.) Plaintiff responded by stating that he was injured, had pain in his neck, and could not get up. Plaintiff added that if Defendants tried to degrade him, he would file a grievance. Defendant Vanbuskirk replied that if Plaintiff wanted to file a grievance, he was going outside without any clothes and admonished Plaintiff not to catch a cold.
>
> Defendants Vanbuskirk and Parker dragged Plaintiff down a flight of stairs naked and threw him into a restraint chair where "an unknown female employee placed a folded sheet across [Plaintiff's] genitalia." (*Id.*, PageID.4.) Defendants Vanbuskirk and Parker then wheeled Plaintiff into health care, where he lost consciousness. At this point, Plaintiff was taken to McLaren Hospital, where it was determined that his Levothyroxine levels were too high, which caused Plaintiff to faint. The doctor at McLaren ordered that Plaintiff's Levothyroxine dosage be reduced.

(ECF No. 6 at PageID.22–23.)

Defendants now assert that Plaintiff's claims must be dismissed because he failed to exhaust his administrative remedies.

## II. Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

2

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### III. Discussion

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing. *Id*. With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion,"

defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue is believed to fall within the jurisdiction of Internal Affairs." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ Q (effective 03/18/2019). If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ DD. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ HH. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

4

In support of their motion, Defendants Submit a Step III Grievance Report for Plaintiff dated March 2, 2023, showing all of the grievances Plaintiff pursued through Step III during the period in question. (ECF No. 20-3.) The report shows that Plaintiff pursued one grievance based on events that occurred at DRF, Grievance DRF-20-10-2694-28I (the 2694 Grievance). The 2694 Grievance did not name either Defendant, nor did it include any facts about their conduct alleged in the complaint. Instead, the grievance complained about the medical care that Plaintiff received from P.A. Sperling. (*Id.* at PageID.98.) Defendants contend that, for these reasons, Plaintiff failed to properly exhaust his claim against them. Defendants further note that, because the 2964 Grievance was rejected at Step I and the rejection was upheld at Steps II and III, his grievance also fails to exhaust his claims for this reason. (ECF No. 20 at PageID.77–78.)

Plaintiff does not dispute that the 2694 Grievance did not exhaust his claims against Defendants. He contends, however, that he exhausted his claims through two other avenues. First, he asserts that he filed a Prison Rape Elimination Act (PREA) complaint regarding the shower incident. As support, he submits a copy of a PREA grievance form and a memorandum from RUM Vanslooten acknowledging receipt of his PREA grievance.[1] In the memorandum, RUM Vanslooten stated that although Plaintiff's allegations did not amount to a PREA grievance because they did not involve sexual abuse, his claim would still be investigated, and the results would be shared with Plaintiff. (ECF No. 23-1 at PageID.111.) Plaintiff states that he never received the results because he was transferred before the investigation was completed. He further states that he wrote a letter to RUM Vanslooten inquiring about the matter but he never received a response. (ECF No. 23 at PageID.104–05.)

---

[1] The PREA grievance is apparently a carbon copy. Because the text is smudged and faint, it is difficult to read. (ECF No. 23-1 at PageID.112.)

Plaintiff also claims that he filed a Step I grievance against Defendants but never received confirmation that it had been received and filed. (*Id.* at PageID.105.) Plaintiff submits a December 17, 2020 letter to the grievance coordinator referencing his two prior requests for a step-two grievance form concerning the incident on or about October 19, 2020, involving Defendant VanBuskirk. Plaintiff again requested a Step II form because the grievance coordinator had not acknowledged receipt of this Step I grievance. The letter contains a notation from the grievance coordinator that the grievance identifier was needed. (ECF No. 23-2.) Plaintiff claims that he submitted another letter to the grievance coordinator on December 21, 2020, again requesting a Step II form for his grievance against Defendant VanBuskirk and stating that it was impossible for him to provide a grievance identifier because the grievance coordinator had never acknowledged receipt of his Step I grievance. In response, the grievance coordinator referenced the 2694 Grievance regarding P.A. Sperling. (*Id.* at PageID.114.) Finally, Plaintiff claims that he sent a letter to the grievance coordinator on December 23, 2020, noting that it was his fifth request for a Step II form regarding his issue with Defendant VanBuskirk. Plaintiff explained that the 2694 Grievance concerned a separate issue, and he reiterated that it was impossible for him to provide a grievance identifier because the grievance coordinator's office never acknowledged receipt of the Step I grievance. (ECF No. 23-4.) Plaintiff claims that the letter was returned to him without a Step II form. (ECF No. 23 at PageID.106.)

Plaintiff contends he should be deemed to have properly exhausted his administrative remedies on two grounds. First, he contends that, because his PREA grievance was not rejected, but instead accepted for investigation, the MDOC waived any objection it might have to Plaintiff's use of the PREA process. (*Id.* at PageID.104.) This argument has merit. By allowing Plaintiff to proceed under the PREA process set forth in Policy Directive 03.03.140 with his complaints that

did not amount to sexual abuse, the MDOC waived any irregularity in Plaintiff's use of the PREA process. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010 ) (holding that prison officials waive the enforcement of procedural rules when the prison officials address a grievance on the merits). Based on Plaintiff's submissions, Plaintiff has demonstrated exhaustion of his claim through use of the PREA grievance process.

Second, citing *Ross v. Blake*, 578 U.S. 632 (2016), Plaintiff contends that MDOC officials rendered the grievance process unavailable to him. (*Id.* at PageID.106–07.) In *Ross*, the Supreme Court observed that a grievance process is unavailable where, among other things, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. The Court noted that exhaustion is not required "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644; *see also id.* at 644 n.3. In particular, Plaintiff contends that MDOC rendered the grievance process unavailable by failing to acknowledge receipt and filing of his Step I grievance and thus not providing him a grievance identifier that he needed to obtain a Step II appeal form. Plaintiff has, in fact, presented evidence indicating that he was unable to pursue a Step II appeal because he lacked a grievance identifier and the grievance coordinator would not issue a Step II appeal form without a grievance identifier. (ECF No. 23-2 at PageID.113.)

Given Defendants' failure to respond to Plaintiff's evidence, they have failed to demonstrate the absence of a genuine issue of material fact that Plaintiff failed to exhaust his administrative remedies. Defendants thus have not met their summary judgment burden.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **deny** Defendants' motion for summary judgment based on exhaustion (ECF No. 19).

Dated: August 20, 2024                                    /s/ Sally J. Berens
                                                          SALLY J. BERENS
                                                          U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).